## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Anthony M.,[1]                                          Case No. 23-cv-178 (DJF)

        Plaintiff,

v.
                                                        **ORDER**
Martin J. O'Malley,[2]
*Commissioner of Social Security Administration*,

        Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Anthony M. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision").  This matter is before the Court on Plaintiff's motion for summary judgment and Defendant's request for relief.[3]  For the reasons given below, the Court denies Plaintiff's motion for summary judgment and affirms the Commissioner's Decision.

---

[1]  This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2]  Martin J. O'Malley became Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of section 205(g) of the Social Security act, 42 U.S.C. § 405(g), the Court substitutes Martin J. O'Malley for Kilolo Kijakazi as the defendant in this matter.

[3]  The new Supplemental Rules for Social Security Actions under 42 U.S.C. 405(g) no longer require parties to file cross-motions for summary judgment, but instead require the parties to file a "brief for the requested relief."  Supplemental Rule 6.  Defendant filed such a brief (ECF No. 10), but Plaintiff filed a motion for summary judgment (ECF No. 6).

# BACKGROUND

## I. Plaintiff's Claim

Plaintiff applied for DIB on December 27, 2019 and applied for SSI on March 2, 2020.[4] (Soc. Sec. Admin. R. (hereinafter "R.") 131, 132, 272-277, 278-279.)[5]  At that time he was 36-years old, with a four-year college degree and prior work experience as a respiratory therapist, lab lead, school paraprofessional, tutor, CDL driver, video/pizza clerk, and data entry/assistant office manager.  (R. 321.)  Plaintiff alleged he became disabled on February 2, 2019 (R. 135, 136), resulting from an unspecified brain injury, balance issues, migraines, photo sensitivity, vision issues, problems with mental clarity, tinnitus, depression, and cognitive problems. (R. 63, 97, 299.)

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

---

[4]  Both the Decision and the parties erroneously state Plaintiff filed an application for SSI on April 9, 2021.  (*See* R. 11; *see also* ECF Nos. 7 at 2; 10 at 1.)  But April 9, 2021 is when Plaintiff filed a Request for Reconsideration for SSI.  (R. 179.)  He filed his initial application for SSI on March 2, 2020.  (*See* R. 132, 272.)  This discrepancy does not alter the Court's analysis or conclusions.

[5]  The Social Security administrative record (R.) is filed at ECF No. 4.  For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 416.920(a)(4).  At step one, the claimant must establish that he is not engaged in any "substantial gainful activity."  *Id.* § 416.920(a)(4)(i).  The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments.  *Id.* § 416.920(a)(4)(ii).  At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  *Id.* § 416.920(a)(4)(iii).[6]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work.  *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

---

[6] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R Part 404, Subpart P, App. 1.

## III.     Procedural History

The Commissioner denied Plaintiff's applications for DIB and SSI initially (R. 62-95; 96-130) and on reconsideration (R. 180-182; 183-185).  On December 15, 2021, at Plaintiff's request (R. 196-197), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications.  (R. 36-61.)  Plaintiff and a vocational expert testified at the hearing.  (R. 36.) Plaintiff was represented by an attorney.  (R. 36.)  After the hearing, the ALJ determined that Plaintiff has the following severe impairments:  (1) migraine headaches; (2) balance disorder; (3) obesity; (4) obstructive sleep apnea; (5) traumatic brain injury; (6) visual deficits; (7) vertigo; (8) gout; (9) mild cognitive disorder; and (10) depression.  (R. 13-14.)  The ALJ also determined that Plaintiff has several non-severe impairments: (1) secondary hyperparathyroidism; (2) hypercalciuria; (3) essential hypertension; and (4) hearing loss.  (R. 14.)  The ALJ found that while Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace, and mild limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) adapting or managing himself, Plaintiff's mental limitations do not severely limit any area of broad functioning.  (R. 15.)  The ALJ concluded that Plaintiff's impairments, alone or combined, do not meet or medically equal any impairment in the Listing.  (R. 14-16.)  The ALJ then determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR e 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, never balance as that term is defined in the Selected Characteristics of Occupations, occasionally stoop, kneel, crouch and crawl, occasional field of vision requirement, occasional near acuity, occasional reading, moderate noise environment, no exposure to unprotected heights or moving mechanical parts, no operation of a commercial motor vehicle, no exposure to vibration, and simple, routine and repetitive tasks that are not performed at a fast production rate pace, such as that found in assembly line work.

(R. 17.)  After assessing Plaintiff's RFC (R. 17-24), the ALJ classified Plaintiff's past relevant

4

work as "respiratory therapist" (representative Dictionary of Occupational Titles ("DOT") # 076.361-014) (R. 24). The ALJ determined that since the demands of this job exceed Plaintiff's RFC, he is unable to perform past relevant work. (R. 24.)

The ALJ then evaluated whether Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy. (R. 25.) Based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of performing such other jobs, including: "housekeeping cleaner" (DOT #323.687-014, 115,000 jobs in the national economy); "sales attendant" (DOT #299.677-010, 200,000 jobs in the national economy); and "cafeteria attendant" (DOT #311.677-010, 70,000 jobs in the national economy). (R. 25.) The ALJ concluded on that basis that Plaintiff is not disabled. (R. 25-26.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-7), and this lawsuit followed.

## DISCUSSION

### I.    Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id*. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). In other words, "an ALJ is required to construct a 'logical bridge' between the evidence and his conclusion." *Jacobs v. Astrue*, No. 08-cv431, 2009 WL 943859 at, *3 (D. Minn. April 6, 2009) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000)).

## II.   Analysis

Plaintiff contends the ALJ wrongly discounted the severity of certain physical and mental impairments. (ECF No. 7 at 11-13; ECF No. 11 at 1-3.) He also contends the ALJ's RFC analysis is not supported by substantial evidence in the record and that the ALJ erred by finding Plaintiff could perform other jobs existing in significant numbers in the national economy. (ECF No. 7 at 13-14; ECF No. 11 at 3.)

### A.   Severity of Plaintiff's Impairments

Plaintiff argues the ALJ erred by "glaz[ing]" over the conditions he found non-severe, including wrongly discounting the severity of Plaintiff's secondary hyperparathyroidism, hypercalciuria, essential hypertension, and hearing loss, and failing to account for Plaintiff's neck and back pain. (ECF No. 7 at 11; ECF No. 11 at 1-2.) Plaintiff also argues the ALJ erred when he found Plaintiff had only a mild limitation in understanding, remembering, and applying information. (ECF No. 7 at 11-12; ECF No. 11 at 2-3.)

#### 1.   Physical Impairments

Plaintiff bears the burden at step two of the sequential analysis to show a severe

impairment, though the burden at this step is "not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Although severity is not an onerous requirement, "it is also not a toothless standard, and [the Eighth Circuit has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (collecting cases). A severe impairment is one that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c), 416.920(c). By contrast, an impairment that is not severe establishes "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. "Numerous district courts in the District of Minnesota, and other districts in the Eighth Circuit, have held that an ALJ's failure to consider an impairment at Step Two is harmless error if the ALJ considered the effects of the impairment at later stages of the evaluation process." *Kendrick B. v. Kijakazi*, 21-cv-0068 (JFD), 2022 WL 2670052, at *4 (D. Minn. July 11, 2022) (collecting cases). In other words, "if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process[,]" the error is harmless. *Coleman v. Astrue*, 4:11-cv-2131 (CDP), 2013 WL 665084, at *10 (E.D. Mo. Feb. 25, 2013) (citing *Matlock ex rel. D.S. v. Astrue*, 4:11-cv-1322 (FRB), 2012 WL 4109292, at *11 (E.D. Mo. Sep. 19, 2012)). However, when an ALJ fails to find an impairment severe at step two, and then fails to consider the effects of the impairment in Plaintiff's RFC, the omission constitutes reversible error. *Steel v. Kijakazi*, 21-cv-2105, 2022 WL 1696030, at *3 (W.D. Ark. May 26, 2022).

The ALJ determined Plaintiff suffers from several severe impairments but concluded Plaintiff's secondary hyperthyroidism, hypercalciuria, essential hypertension, and hearing loss are all non-severe. (R. 14.) He observed:

7

The record also shows that the claimant was diagnosed with secondary hyperparathyroidism, hypercalciuria, and essential hypertension in October 2021 and placed on medication for hypertension. (32F/4) The primary care note dated September 3, 2021 indicates that the claimant has always had normal calcium levels and normal kidney function in the past and notes one episode of kidney stones in 2020. (33F/11) As secondary hyperparathyroidism, hypercalciuria and essential hypertension have not met the 12 month duration requirement, they are not severe impairments. Kidney stones required treatment on only one occasion, and thus would not have more than a minimal impact on work functioning and are not a severe impairment.

Audiometry showed mild high frequency hearing loss on the right with a speech recognition score of 88%, and moderate to severe high frequency hearing loss on the left, with a speech recognition score of 80%. (4F/7) The claimant does not allege functional limitations due to hearing loss, and no clinician reports limitations related to the claimant's hearing loss. The undersigned therefore finds that the claimant's hearing loss would not have more than minimal impact on work functioning, and is not a severe impairment.

(R. 14.)

a.    **Secondary hyperthyroidism, Hypercalciuria, and Essential Hypertension**

In his opening brief, Plaintiff argues vaguely that the ALJ overlooked record evidence to find his secondary hyperthyroidism, hypercalciuria, and essential hypertension are non-severe. (ECF No. 7 at 11.) But Plaintiff does not cite to any specific evidence the ALJ overlooked. In his reply brief, Plaintiff argues the ALJ erred by wrongly applying the duration requirement which he points out may also be satisfied when a condition is expected to last for a continuous period of twelve months. (ECF No. 11.) This argument is unavailing, however, because Plaintiff does not cite to any evidence that his conditions were expected to last for a continuous period of twelve months.

As stated above, it is Plaintiff's burden to show a severe impairment. *Caviness*, 250 F.3d at 605. While this burden is not great, Plaintiff's failure to cite to *any* evidence the ALJ overlooked, or argue with any particularity how his conditions significantly limit his ability to

perform basic work activities, does not satisfy his burden.  *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting Plaintiff's argument for failure to proffer relevant law or facts).  Plaintiff states only that the ALJ erred because he did not consider that Plaintiff's conditions *could* last twelve months, but Plaintiff cites nothing in the record to suggest Plaintiff's conditions actually were expected to last for a continuous period of twelve months.  The Court therefore cannot conclude the ALJ erred by finding the conditions were not severe because they had not yet met the duration requirement.  The Court also finds there is substantial evidence in the record to support the ALJ's determination that Plaintiff's secondary hyperthyroidism, hypercalciuria, and essential hypertension are non-severe.  The ALJ noted that Plaintiff was placed on medicine for his hypertension in 2021 (R. 14), which his medical provider believed would improve his hypertension.  (*See* R. 1402.)  The ALJ also cited a 2021 medical note regarding Plaintiff's secondary hyperthyroidism and hypercalciuria that stated Plaintiff "has always had normal calcium levels and normal kidney function" and just one episode of kidney stones.  (R. 14, citing R. 1434.)  Based on this record, the ALJ's findings regarding the severity of these conditions were well-supported.

### b.    Hearing Loss

Plaintiff argues substantial evidence does not support the ALJ's finding that his hearing loss is non-severe.  (ECF No. 7 at 12-13; ECF No. 11 at 3.)  But at both steps two and four of the sequential analysis, the ALJ cited medical notes regarding audiometric testing.  (R. 14, 20-21, citing R. 443, 453.)  The ALJ recognized that the testing showed mild high frequency hearing loss on the right with a speech recognition score of 88%, and moderate to severe high frequency hearing loss on the left with a speech recognition score of 80%.  The ALJ observed, however, that Plaintiff did not allege functional limitations due to hearing loss, and no clinician reported limitations

related to his hearing loss.  (R. 14.)

Plaintiff cites to other evidence to argue his hearing loss is severe.  He points to: (1) a 2015 diagnosis of chronic serous otitis media ENT in his left ear; (2) a history of middle ear effusion and T tube stents in both ears; and (3) his administrative hearing testimony that he struggles with sound problems and recently received hearing aids to help with his hearing loss and tinnitus.  (ECF No. 7 at 12, citing R. 52, 56, 398, 492, 568, 998.)

While the record may contain evidence of hearing issues, the Eighth Circuit has explained the question "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision."  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  Here, the ALJ found the absence of any hearing limitation reported by a clinician compelling.  While Plaintiff may disagree with ALJ's finding, it is not the Court's job to reweigh the evidence.  *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence").  If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision.  *Perks*, 687 F.3d at 1091; *see also Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) ("If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)).  Because the ALJ reviewed the record evidence and adequately supported his determination regarding the severity of Plaintiff's hearing loss, the Court must affirm his finding.

### c.      Neck and Back Pain

Plaintiff also argues the ALJ erred by overlooking other severe impairments, including his neck and back pain.  (ECF No. 7 at 11; ECF No. 11 at 2.)  He cites a variety of diagnoses related to his neck and back and his history of chiropractic treatment to argue the ALJ should have found his neck and back pain is a severe impairment.  (ECF No. 7 at 11; ECF No. 11 at 2.)

The ALJ did not address Plaintiff's neck and back pain at step two of the sequential analysis.  This error was harmless, however, because he considered the effects of the impairment at step four of the analysis.  *See Kendrick B.*, 2022 WL 2670052, at *4.  At step four, the ALJ cited the same chiropractic treatment notes Plaintiff references, but he made the additional observation that the notes documented improvement in Plaintiff's symptoms.  (R. 18, citing 970.)  He also noted that in March 2020, Plaintiff had full range of motion in his neck but demonstrated pain behaviors, including rubbing his neck.  (R. 20, citing R.1259.)  Because the Decision reflects the ALJ considered Plaintiff's neck and back pain in his RFC analysis, the severity determination has no legal significance.  *Kendrick B.*, 2022 WL 2670052, at *4.

### 2.      Mental Impairments

The ALJ determined that Plaintiff's severe mental impairments include depression and mild cognitive disorder.  (R. 13.)  At step two of the sequential analysis, the ALJ determined the severity of Plaintiff's mental impairments resulting from these conditions did not meet or medically equal the requirements of Listings 12.04 (depression, bipolar, and related disorders) or 12.11 (neurodevelopmental disorders).  (R. 14-16.)  Plaintiff argues the ALJ's determination is flawed because the ALJ failed to recognize he is actually more limited in his ability to understand, remember, and apply information than the ALJ found he was.  (ECF No. 7 at 11-12; ECF No. 11 at 2-3.)

To evaluate the severity of a claimant's mental impairment and assess how it limits functioning in a work setting, an ALJ must consider four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.A.2.b.  Pursuant to the regulation, the ALJ must rate these areas based on a five-point scale of none, mild, moderate, marked, and extreme.  *Id.* § 12.00.F.2.  A finding of "none" or "no limitation" indicates a claimant is able to function independently, appropriately, and effectively, on a sustained basis, while a mild limitation indicates only a slightly limited ability to function in that manner.  *Id.* § 12.00.F.2(a)(b).  A marked limitation indicates a seriously limited ability to function independently, appropriately, or effectively on a sustained basis, and an extreme limitation indicates a complete inability to do so.  *Id.* § 12.00 F.2(d)(e).  To meet the criteria for disability under Listings 12.04 (depression, bipolar, and related disorders), or 12.11 (neurodevelopmental disorders), a claimant must have an "extreme" limitation in at least one of the four functional areas or a "marked" limitation in at least two areas.  *Id.* § 12.00.A.2.b.

After weighing the evidence, the ALJ determined that neither of Plaintiff's mental impairments resulted in one extreme limitation, or two marked limitations, so as to automatically trigger a disability finding under the Listings.  (R. 16.)  The ALJ found Plaintiff only has a mild limitation in understanding, remembering or applying information.  (R. 15.)  The Social Security Administration ("SSA") defines this functional area as the ability to learn, recall, and use information to perform work activities.  20 C.F.R. Part 404, Subpart P, Appendix E.1.  The ALJ acknowledged Plaintiff's self-report that he cannot think straight and has a poor memory, but cited record evidence that Plaintiff: (1) manages his money; (2) makes medical decisions independently; and (3) showed average intellectual functioning.  (R. 16, citing R. 311-319, 353-361, 533-543.)

The ALJ noted that Plaintiff's mental status examinations did not consistently document cognitive problems, and according to a neuropsychologist, Plaintiff's ongoing mild depression may contribute to Plaintiff's limitation in this area. (R. 16, citing R. 1319, 1314, 1214, 1094.) The ALJ similarly found Plaintiff has only mild limitations in adapting or managing himself and interacting with others. In contrast, the ALJ found Plaintiff had a moderate limitation in in concentrating, persisting, or maintaining pace. (R. 15-16, citing R. 311-319, 353-361, 537-543, 806, 812, 1319, 1506.)

Plaintiff challenges the ALJ's finding that he is only mildly limited in his ability to understand, remember, and apply information, but does not contest the ALJ's findings concerning the severity of his limitations in the other three functional areas. (ECF No. 7 at 11-12; ECF No. 11 at 2-3.) To support his argument that he is more limited in this area, Plaintiff cites: (1) his hearing testimony that his mother handles his finances due to his forgetfulness; (2) a statement in his 2021 Function Report that he often forgets to take his medicine despite setting a phone alarm; and (3) a 2021 neuropsychological evaluation that showed some limitations. (ECF No. 7 at 11-12, citing R. 52, 356; ECF No. 11 at 2-3, citing R. 545.) Plaintiff claims the ALJ failed to explain why he found Plaintiff's testimony not credible or why he relied on out-of-date statements to support his finding that Plaintiff is just mildly limited in this area. (ECF No. 11 at 3.)

The Court finds the ALJ properly supported his finding regarding the severity of Plaintiff's limitation in understanding, remembering or applying information by citing evidence in the record indicating that Plaintiff manages his money, makes medical decisions independently, and shows average intellectual functioning. (*See* R. 16, citing R. 311-319, 353-361, 533-543). That Plaintiff disagrees with the how the ALJ weighed the evidence does not alter the Court's conclusion because, as previously discussed, the Court is not permitted to reweigh the evidence. *Schmitt*, 27

13

F.4d at 1361.  To the extent Plaintiff argues the ALJ overlooked certain evidence, the Court must affirm the Commissioner's Decision if there is substantial evidence that supports it—even if there may be other substantial evidence to support a different outcome.  *Vossen,* 612 F.3d at 1015; *Perks*, 687 F.3d at 1091; *Nash*, 907 F.3d at 1089.  Because there is substantial evidence to support the ALJ's severity determination regarding Plaintiff's ability to understand, remember, or apply information, the Court affirms his finding.

### B.    Plaintiff's RFC

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because it does not account for certain medical notes that limited Plaintiff to no work or part-time work.  (ECF No. 7 at 13, citing R. 495, 498, 560, 904, 1000-1385; ECF No. 11 at 3.)  He further contends the ALJ erred by failing to articulate why he discounted Plaintiff's treating physician's opinion that Plaintiff is unable to work in any capacity.  (ECF No. 7 at 13; ECF No. 11 at 3.) Plaintiff also appears to argue his RFC should have fully precluded his ability to work because the ALJ identified a number of severe impairments at step two of the sequential analysis.  (ECF No. 7 at 14.)

A claimant must carry the burden of proving his RFC.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004).  The ALJ bears primary responsibility for assessing the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations.  *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000).  An ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent

review of the record.  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).  The ALJ must only include in the claimant's RFC those limitations that the medical and mental health evidence supports.  *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (finding that "the ALJ properly included only those limitations supported by the record as a whole").

The Court finds the ALJ's RFC analysis is replete with citations to evidence that meets the substantial evidence standard.  After explaining that he considered the entire record, including both medical and nonmedical evidence, the ALJ concluded that Plaintiff has the capacity to perform light work as defined in 20 CFR e 404.1567(b) and 416.967(b), except that: he can only occasionally climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can never balance as that term is defined in the Selected Characteristics of Occupations; he can only occasionally stoop, kneel, crouch and crawl; he has an occasional field of vision requirement; he requires occasional near acuity; he can only perform occasional reading; he requires a moderate noise environment; he can have no exposure to unprotected heights or moving mechanical parts; he cannot operate a commercial motor vehicle; he can have no exposure to vibration; and he can perform only simple, routine and repetitive tasks that are not performed at a fast production rate pace, such as that found in assembly line work.  (R. 17.)  The ALJ explained that although one of Plaintiff's treating physicians noted in multiple treatment notes that Plaintiff is unable to work in any capacity, the ALJ did not find that particular opinion persuasive "because the determination to work is reserved for the Commissioner."  (R. 24.)

To support his RFC determination, the ALJ provided a comprehensive analysis of each of Plaintiff's impairments and included myriad citations to medical evidence, including many of the medical notes Plaintiff claims he overlooked.  (*See* R. 16-24, citing, *e.g.*, R. 495, 904, 1094, 1167, 1073 (medical notes indicating work restrictions).)  To the extent Plaintiff argues the ALJ's RFC

determination conflicts with the ALJ's finding at step two that Plaintiff has several severe impairments, Plaintiff conflates the requirements of step two and step four. At step four of the sequential analysis, Plaintiff must carry the burden to establish his RFC and prove he is not capable of performing any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). Moreover, the ALJ spelled out how the impairments he found at step two translated into Plaintiff's RFC at step four. (R. 23.) He explained:

> The claimant's obesity, complaints of fatigue, balance and vision problems support the limitation to light exertion work, with the listed postural and environmental limitations. The claimant's vision deficits support the limitation to work with only occasional field of vision requirements, occasional near acuity and occasional reading. The claimant's mild high frequency hearing loss with good speech discrimination scores support the limitation to moderate noise environments. The claimant's migraine headaches, examinations showing intermittent word finding difficulty and distractibility/tangential thought process, and ongoing depressed mood but normal psychometric testing support the limitation to simple, routine and repetitive tasks that are not performed at a fast production rate pace.

(R. 23.) The ALJ's Decision thus provided a well-reasoned and logical analysis explaining his determination of Plaintiff's RFC, which the ALJ supported with ample citations to the record. The Court cannot accept Plaintiff's invitation to supplant the ALJ's judgment by reweighing that evidence. *Schmitt*, 27 F.4d at 1361.

Furthermore, the ALJ did not err by summarily discounting Plaintiff's physician's opinion that Plaintiff is unable to work. Because Plaintiff's ability or inability to work is a determination ultimately reserved solely to the Commissioner, the ALJ was not required to provide any explanation or analysis of his decision to reject his physician's conclusion on this issue. 20 C.F.R. § 404.1520b(c)(3)(i) (explaining that evidence on issues reserved for the Commissioner, including a claimant's ability to work, is inherently neither valuable or persuasive and does not require any analysis about how an ALJ considered it). Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court

must affirm it.  *Perks*, 687 F.3d at 1091.

###     C.     Other Jobs

Finally, Plaintiff argues the ALJ erred at step five by wrongly concluding he is able to perform work that exists in the national economy.  (ECF No. 11 at 14.)  He contends the ALJ should not have relied on the vocational expert's testimony that Plaintiff could perform any of the jobs the vocational expert identified because: (1) the vocational expert cited the DOT, which Plaintiff claims is out of date and unreliable; and (2) the medical evidence in the record does not support a finding that Plaintiff is able to engage in substantial gainful activity in any position.  (*Id.*)

During Plaintiff's hearing, the ALJ asked the vocational expert whether a hypothetical person with Plaintiff's RFC could perform any jobs that exist in the national economy.  (R. 57-58.)  The vocational expert testified that Plaintiff could perform work as a: "housekeeping cleaner" (DOT #323.687-014, 115,000 jobs in the national economy); "sales attendant" (DOT #299.677-010, 200,000 jobs in the national economy); and "cafeteria attendant" (DOT #311.677-010, 70,000 jobs in the national economy).  (R. 58.)  He further testified that, based on his professional experience, a hypothetical person would still be able to perform each of those jobs if he was off task up to 15 percent of the day.  (R. 58.)

At step five of the sequential analysis, the ALJ may rely on a vocational expert's testimony to meet his burden of proof to show that jobs exist in the national economy that a claimant can perform.  *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997).  To constitute substantial evidence, the vocational expert's testimony must be "based on a hypothetical [question] that captures the concrete consequences of the claimant's deficiencies."  *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted).  The hypothetical need include only those impairments that the ALJ has found are substantially supported by the record as a whole.  *Roe v.*

*Chater*, 92 F.3d 672, 675 (8th Cir.1996).

As discussed above the record does not compel a finding that Plaintiff was more limited than the ALJ's already restrictive RFC determination.  The ALJ appropriately included in the hypothetical he posed to the vocational expert only those limitations he found to be supported by the evidence as a whole.  The vocational expert identified three jobs existing in significant numbers in the national economy that Plaintiff can perform despite his impairments and resulting limitations. (R. 58.)  Furthermore, the Court must overrule Plaintiff's objection to the vocational expert's reliance on the DOT because the Eighth Circuit affirmed in 2021 that, even though the DOT has not been updated since 1991, an ALJ does not err in considering a vocational expert's testimony that relies on it.  *See Medved v. Kijakazi*, 855 F. App'x 311 (8th Cir. 2021) (per curium).  The Court therefore cannot conclude that the ALJ erred at step five.  Because there is substantial evidence to support the ALJ's finding that Plaintiff can perform jobs that exists in significant numbers in the national economy, the Court must affirm it.  *Perks*, 687 F.3d at 1091.

## CONCLUSION

Because substantial evidence supports the Decision, the Court denies Plaintiff's motion for summary judgment and affirms the Commissioner's Decision.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.    Plaintiff's Motion for Summary Judgement (ECF No. [6]) is **DENIED**;

2.    Defendant's Request for Relief (ECF No. [10]) is **GRANTED**; and

3.    This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 6, 2024

*s/ Dulce J. Foster*
DULCE J. FOSTER
United States Magistrate Judge